DEAN *vs.* M. & F. HOWELL.

To warrant a claim on a note lent for a specific object and perverted to another purpose, it must be taken bona fide, and in the ordinary course of trade. (a)

Defendants lent M. their note for $3000 to take up a note which they had previously lent him. S. & S., being informed that the note was lent M. " to help him in his business," advanced him $2000 on his check for that amount, taking the $3000 note as collateral security, and charged usurious interest. Before this note fell due, S. & S. released the usurious rate of interest, and took M.'s note for the original advance with legal interest, still retaining the $3000 note as collateral. *Held,* that this did not constitute them bona fide holders of the $3000 note.

The loan of $2000 by S. & S. was void in its inception on account of usury, and the subsequent transaction was not equivalent to an original advance.

ACTION on a promissory note for $3000, made by defendants, dated December 28, 1836, and payable to the order of

---

(a) An innocent holder of negotiable paper who has received it in the ordinary course of trade, but from a person having no title to or authority to transfer it, will not be protected against the claim of the previous owner, when the paper was received as security for an antecedent debt due from the person who made the unauthorized transfer, and the holder neither parted with value on the credit of it, nor relinquished any previous security. *Stalker* v. *McDonald,* 6 Hill, 93. See the decisions on the meaning of the words *bona fide holder for a valuable consideration* collected in this case; see also *Youngs* v. *Lee,* 18 Barb., 187, and 2 Kern., 553; *Stewart* v. *Small,* 2 Barb., 559; *Mickles* v. *Colvin,* 4 Barb., 304; *Montross* v. *Clark,* 2 Sandf., 115; *Fenby* v. *Pritchard,* 2 Sandf., 151; *Spears* v. *Myers,* 6 Barb., 445. In *Youngs* v. *Lee,* where the owners of a note due in a few days, and deposited for collection with the bank where it was payable, withdrew it from the bank and surrendered it to the maker on receiving from him his note payable in three months, endorsed by a third person; *it was held,* that they were holders for value of the latter note to the amount of the note surrendered, and that they were en-

D. K. Minor one year from date. Minor endorsed the note in blank and gave it together with his check for $2000 to his broker, with instructions to borrow $2000 on the check and leave the note as security. The broker testified that he negotiated the loan with Smith & Sherman for twenty or thirty days at an interest of one dollar per day for each $1000. He told Sherman the note was given *to help Minor in his business*, that it was *lent to Minor by one of the Howells*, who was his father-in-law. Witness effected a renewal of the loan for Minor on his check. Minor swore that he received the note of defendant F. Howell, his father-in-law, to take up another note previously lent him by defendants, and on which there were due $4000. ° Witness was to raise $1000, and with that and this note to take up the first, which had been lent to witness the 7th of December, 1835. The note remained with Smith & Sherman till late in December, 1837, when their clerk called for the money, and on the 29th of December witness gave his note for the original loan with simple interest, and took up his check. He left the note in suit with Smith and Sherman to secure the note he then gave, and they agreed in writing to return it on his paying his own note. Trowbridge, Smith & Sherman's clerk, proved the usury expurgated, and the new note of Minor taken for the money lent, with legal interest, payable in one year. This was done during the days of grace of the note in suit; and

titled to recover this amount against the endorser, notwithstanding the delivery of the note to them was a diversion of it by the maker from the purpose for which it had been endorsed, they having received it without notice of such diversion. A.'s transfering in payment of a debt a note endorsed for his accommodation, though he told the endorsers that he intended raising money on it to be applied in trade, is not such a diversion of the note from its alleged object as will discharge the endorsers, it not appearing that, at the time of the endorsing, the use to which the note might be applied was at all important to them. *Mohawk Bank* v. *Corey*, 1 Hill, 513. Where A. lent B. his note, to enable him to borrow money, and B. gave the note, as collateral security for a previous debt, to C. who had notice of the object for which it was made, *held*, that neither C., nor his transferee with notice could recover from A. *Beers* v. *Culver*, 1 Hill, 589. But where a note is endorsed for the accommodation of the maker, without restriction as to the purposes to which it is to be applied, the maker may apply it to any purpose beneficial to himself; and a party who receives it on account of an antecedent debt due him by the maker is entitled to collect the note. *Seneca County Bank* v. *Neass*, 3 Comst., 442.

Dean v. Howell.

it was retained by Smith & Sherman as collateral security for Minor's note till 1840. At the time of expurgation there was no express agreement to forbear on Minor's note; though that, witness thought, was the understanding, viz., to wait till Minor's note became due. He said the broker told Smith & Sherman that the note in suit was given by F. Howell to assist M. in his business. Defendants' counsel requested the judge to charge, 1. That the expurgation on December 29, 1837, did not make Smith & Sherman bona fide holders, they did not then part with value. Besides, the note had been misapplied, and they knew it. And the plaintiff's right is no better than theirs. 2. Smith & Sherman receiving it as security, they knowing it was lent, defendants were mere sureties to Smith & Sherman; and their taking Minor's note for a year and agreeing to extend the time discharged defendants. 3. The note being due 29th December, when expurgation took place, their retaining it as security would not make them bona fide holders. The judge refused to charge as requested, and directed the jury to find for the plaintiff. Verdict accordingly. Exceptions. Defendant moves for a new trial.

*By the Court*, COWEN, J. There is no pretence that Smith & Sherman took the note originally as bona fide purchasers. I do not say this because they had notice that Howell furnished Minor with the note, or lent it to assist him in his business, though there was a plain perversion, the note having been in fact designed for taking up another note which Howell had lent. The notice did not carry any idea of the particular purpose. A bona fide advance would have been perfectly consistent with the purpose as expressed by the notice. The broker told Sherman plainly enough, however, that the note had been lent, and he took it on a loan grossly and oppressively usurious. (*a*) It lay in the hands of Smith

(*a*) Where an agent, entrusted with a negotiable note for the purpose of procuring it to be discounted, pledged it with a stranger for money lent him for his own use, at usurious interest, it was held that, the transaction being illegal for usury, the lender could not retain the note against the true owner, on the ground that he had received it in good faith, in the usual course of trade. *Keatgen* v. *Parks*, 2 Sandf., 60.

D.—III. 6

& Sherman till nominally due, when within the days of grace they make an agreement with Minor that the demand for usurious interest shall be given up, and take his note at one year for the money lent with the simple interest. They then add a new agreement that the note in question shall remain with them as collateral security, and it did so remain till after it fell due. Now, up to the time of the new arrangement, Minor owed them nothing. All was void for usury. That is not denied; nor is it claimed that, for the actual advance made on the note they had, up to this time, any claim whatever. The only ground on which this action can be sustained, then, is, that the releasing of the usurious interest, and taking the new note was equivalent to an original advance of the money, and clothed them with the character of bona fide holders at and after that time. This I can by no means admit. To warrant a claim on the ground of paramount right upon a lent note, void in its inception, and confessedly perverted as this was, all the authorities agree that it must be taken in the ordinary course of trade. I do not deny that receiving it as collateral security on an actual advance raises a case of bona fides, if the advance be a fair one. But what have we here? Notice that the note was void in its inception; the purchasers' taking it for a void loan, in other words without consideration; and never afterwards advancing any thing. Aware that the makers were not liable they call on the usurious borrower, and, behind the back of the defendants, take a new note which, by expurgating the usury, operates from that time as against him. Then, to secure the performance of this new engagement, the note in question is taken as a pledge. We are then gravely told that all this makes out a bona fide transfer in the ordinary course of trade. But here was no advance of money, actual or constructive. Analyze the transaction; first a debt is made to arise out of a previous moral obligation; then, as a security collateral to such debt, the note is pledged. The obligation to pay dates from the giving of the new note. Up to that time there was none. Then the most we can say is that the note in question was taken as collateral security for that precedent debt. This is not the

good faith which the law means when it holds a purchase of commercial paper sacred, and even allows it to work wrong against third persons whose names are upon it. To warrant such a violent consequence the transaction must not only rest upon an actual advance at the time, of money or its equivalent, but it must be strong in its innocence and purity. To say that the transaction in question was such, and that this note passed in the ordinary course of trade, would be a slander upon the mercantile community. There are devices enough for covering up and saving men against the legal consequences of usury, without adding this to the catalogue.

It is not denied that the note, if unavailable in the hands of Smith & Sherman, is equally so in the hands of the plaintiff. I suppose it was transfered to him merely for the purpose of adding to the embarrassments of the defence. It seems not to have reached his hands till about a year, or at least some months after it was due. It does not appear that he ever paid any thing for it.

I do not inquire whether the various prayers to charge may not have been improperly denied. My opinion is that the learned judge erred in directing the jury to find for the plaintiff instead of the defendants, who made out a clear and full defence.

New trial granted, costs to abide event.